UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KELLEY URELLA, for herself and the purported class members named below Plaintiff[s], <br><br> v. <br><br> VERIZON, JOSEPH SANTOS, ROBERT SYMES, MASSACHUSETTS COMMISSION AGAINST DISCRIMINATION, SUNILA THOMAS GEORGE, and her successors in office, in her capacity as Chair and Commissioner of the MCAD, NELDY JEAN-FRANCOIS, and her Successors in office, as Commissioner of the MCAD, MONSERRATE QUINONES, and her successors in Office, in her capacity as Commissioner of the MCAD and CONSTANCE MCGRACE, and her successors in office, in her capacity as General Counsel of the MCAD, Defendants. | Civil Action No. |

## COMPLAINT

### I.   Nature of the Action

1. Plaintiff Kelley Urella ("Plaintiff Urella"), brings this action against Defendants Verizon and its Director Joseph Santos and his successor Robert Symes (respectively "Defendant Verizon" and collectively "Verizon Defendants") for compensatory and punitive damages, and declaratory and injunctive relief based on gender discrimination, retaliation, aiding and abetting in discriminatory practices, and interfering with the right to be free from discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* and Massachusetts General Laws, Chapter 151B, §§ 4 (1), 4 (4), 4(4A) and 4 (5).

2. Plaintiff Urella also brings this action, seeking only declaratory and injunctive relief against the Massachusetts Commission Against Discrimination, its Commissioners and General Counsel (collectively "MCAD Defendants") for the denial of due process guarantees of the United States and Massachusetts

constitutions, and denial of her rights under Massachusetts General Laws, Chapter 151B, §§ 4 (1), 4 (4), 4(4A) and 4 (5).

3. With regard to her claims against the Verizon Defendants Plaintiff Urella seeks to represent two sub-classes of women employees and former employees ("employees") of Verizon: (a) a sub-class of women employees of Defendant Verizon whose applications for craft-rated jobs were denied; and (b) a sub-class of women employees of Defendant Verizon who were discouraged by Verizon Defendants' acts and practices from applying for craft-rated jobs (Class Members").

4. With regard to her claims against the MCAD Defendants Plaintiff Urella seeks to obtain declaratory and injunctive relief to prevent the MCAD Defendants from violating due process by (a) considering *ex parte* evidence complainants have no ability to rebut or dispute, and (b) applying the wrong legal standard in determining there is no probable cause to proceed to a hearing where (i) material facts on which the finding of no probable cause is founded are disputed by admissible evidence, and/or (ii) no opportunity is provided for a complainant to discover facts that can dispute the assertions of the respondent.

## II. Jurisdiction and Venue

5. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1343 (3) and (4), and the authority to issue the relief pursuant to 42 U.S.C. § 1983.

6. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's claims that Defendants' acts also violated Massachusetts constitutional and statutory provisions.

7. There are actual controversies between Plaintiff and Verizon, and the Plaintiff and the MCAD Defendants, within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201 and 2202, and F. R. Civ. P. 57. Additionally, this Court has jurisdiction to grant injunctive relief under F. R. Civ. P. 65.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Verizon and MCAD Defendants are located in, and the discriminatory and other unlawful acts occurred in Boston, Massachusetts.

### III. The Parties

    *A. PLAINTIFFS*

9. Plaintiff Urella is a female person residing at 139 Shannon Drive, Whitinsville, Worcester County, Massachusetts 01588.

    *B. CLASS ACTION ALLEGATIONS*

10. Pursuant to Fed. R. Civ. P. 23 Plaintiff Urella brings this action against Verizon Defendants on behalf of herself, and all other similarly situated female employees who were also aggrieved by the kind of conduct alleged in Paragraphs 35-65.

11. These consist of two sub-classes: all female employees of Defendant Verizon employed in office/clerical positions who applied for and were denied, or (b) all female employees of Defendant Verizon employed in office/clerical positions were discouraged from applying for craft-rated jobs.

12. The members of the proposed classes (collectively, the "Class Members") are all similarly situated because they all were employed by Defendant Verizon, and denied or discouraged from applying for craft-rated jobs. Many of said persons, Plaintiff Urella included, no longer work for the Defendant Verizon.

13. Verizon Defendants' knowing violations of such laws with respect to Class Members were repeated, willful and intentional.  Verizon Defendants' conduct was carried out with reckless indifference to the rights of Plaintiff Urella and Class Members.

14. Plaintiff Urella and Class Members have been damaged by said violations.

15. Joinder of all Class Members would be impracticable.

16. There are numerous common questions of both law and fact, such as the Defendant Verizon's policy and practice of failing to award craft-rated jobs to female employees.

17. Additional common questions of law and fact include whether Verizon Defendants' conduct was willful and in reckless disregard of Urella and Class Members' rights.

18. The claims of Plaintiff Urella are typical of the claims of Class Members because all were subject to and victimized by the Verizon Defendants' unlawful policies and practices as described in Paragraphs 35-65.

19. Plaintiff Urella is represented by Counsel experienced in complex litigation and, in particular, in litigating class action claims under federal and Massachusetts laws.

20. Plaintiff Urella will fairly and adequately protect the interests of the Class.

21. The prosecution of separate actions against Verizon Defendants under federal and/or Massachusetts law would create a risk of inconsistent or varying adjudications with respect to individual Class Members. Such an outcome would establish incompatible standards of conduct for the Defendant Verizon.

22. In addition, adjudications with respect to individual members of Verizon Class could, as a practical matter, be dispositive of the interests of the other members of the same Class, or could substantially impede or impair the ability of Class Members to protect their interests.

23. Questions of law or fact common to Class Members predominate over any questions affecting only individual Class Members. For that reason, among other reasons, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

24. Facts not common to Class Members are not material to resolving the common legal questions of whether Verizon Defendants' conduct violated various provisions of Massachusetts and/or federal law, and whether any such violations were willful.

25. There will be no difficulty in managing the case as a class action; rather, a class action presents the most streamlined, efficient manner of adjudicating the claims described herein.

26. In addition, practically speaking, Verizon Class Members would encounter substantial difficulty in bringing individual actions to adjudicate the claims raised herein.

C. DEFENDANTS

27. Defendant Verizon is a private employer located and doing business, *inter alia,* in various locations in Massachusetts. It has its primary Massachusetts office in Boston.

28. Defendant, Joseph Santos, at certain relevant times herein, the Human Resources and Labor Relations Director of Defendant Verizon, is or was an individual working at 6 Bowdoin Square, Boston, Suffolk County, Massachusetts.

29. Defendant, Robert Symes, the successor to Joseph Santos as the Human Resources and Labor Relations Director of Defendant Verizon, is an individual working at 6 Bowdoin Square, Boston, Suffolk County, Massachusetts, and was at other relevant times the Human Resources and Labor Relations Director of Defendant Verizon.

30. The Massachusetts Commission Against Discrimination, is an agency of the Commonwealth of Massachusetts doing business *inter alia* in Boston, Massachusetts.
31. Sunila Thomas George is a Commissioner and Chair of the MCAD. She and her successors in office are sued in their official capacity.
32. Neldy Jean-Francois is a Commissioner of the MCAD. She and her successors in office are sued in their official capacity.
33. Montserrate Quiñones is a Commissioner of the MCAD. She and her successors in office are sued in their official capacity.
34. Attorney Constance McGrave is General Counsel of the MCAD. She and her successors in office are sued in their official capacity.

### III.   The Facts

35. Defendant Verizon is an employer as defined under 42 U.S.C. §2000 (b) and Mass. Gen. Laws ch. 151B, § 1(5).
36. Plaintiff Urella was a female employee of Defendant Verizon for approximately thirty (30) years. She is currently retired.
37. At all times relevant herein, Plaintiff Urella was a member and other women in the Verizon Class were members of Local 2325 of the International Brotherhood of Electrical Workers (the "Union") which represents/ed the employees of Defendant Verizon
38. At all times relevant herein, Plaintiff Urella was employed by Defendant Verizon in a clerical/office position, as were virtually all of the women employed by Defendant Verizon in non-management positions.
39. At all times relevant herein, Plaintiff Urella's employment in a clerical/office position paid less than she would have been paid in a craft-rated job.
40. Craft-rated positions included:
    a.   Central Office Technician
    b.   Equipment Installation Technician
    c.   Outside Plant Technician, and
    d.   Splice Service Technician.

Once an employee has one of these titles – s/he has the opportunity to become "rated" through testing. Once rated, the employee receives 10% more weekly pay and higher seniority than others who are not rated.

41. At all times relevant herein, Plaintiff Urella was qualified by her –
    a. test results, including results on updated tests which she was not required to take (that is, grandfathered) but took nonetheless,
    b. courses of study,
    c. physical suitability,
    d. medical condition,
    e. availability,
    f. safety-related requirements,
    g. security background,
    h. driver's license,
    i. driving record,
    j. availability to work the scheduled hours, and
    k. ride-along training

-- to perform or be trained to perform numerous different craft-rated jobs.

42. Before and after filing her aforementioned Complaint and Amended Complaint with the MCAD and EEOC, Plaintiff Urella and other women employed in clerical/office positions applied for hundreds of craft-rated jobs that Defendant Verizon posted as open, including but not limited to the several examples below for which Plaintiff Urella applied:
    a. In February, March and April 2018, 24 craft-rated job openings posted for bidding;
    b. In June 2018, six (6) craft-rated job openings posted for bidding from June 27, 2018 through July 3, 2018; and
    c. Between December 2020 and July 2021, 15 craft-rated openings posted.

43. In each instance the posting for the open position indicated that "qualifications" were distinctly different from "duties."

44. In each instance "qualifications" were defined, *inter alia,* as being: "**Tests**, safety related requirements, Medical evaluation, [maybe] security background, a valid state driver's license with a satisfactory driving record, and availability to work the scheduled hours,"
45. In each instance qualifications did not include prior craft-rated experience.
46. In each such instance Plaintiff Urella and other Class Members met all the components of said "qualifications." In each instance Plaintiff Urella received a notification from Defendant Verizon that she was "already online test-qualified for this position,… [and that] a member of our recruiting and staffing team will contact you if your qualifications align with the requirements of the position."
47. In each instance, Plaintiff Urella was not so contacted and was not awarded the position on which she bid.
48. In each instance, when she and other Class Members applied for craft-rated positions, the Verizon Defendants failed to consider her/their "qualifications [and] physical suitability," and rather only considered only "tenure, union membership and prior work experience."
49. The positions for which Plaintiff Urella and other Class Members were turned down were frequently if not always awarded to men who had less seniority, and no more and/or lesser qualifications and seniority.
50. Verizon Defendants' justification given for hiring men with less seniority and no greater qualifications than Plaintiff Urella and other Class Members is that under Article G30.06, note (c) of the CBA between Union and Defendant Verizon these men had "previous plant experience for the work covered by the vacancy," and the CBA gives them preference on this account over someone like Plaintiff Urella, who does not.
51. In fact, Defendant Verizon actually defined previous work experience as including "… training and/or schooling in the electrical or electronics field," all of which Plaintiff Urella had going back thirty years and other Class Members also had.
52. However, in its hiring practice, Defendant Verizon gave no consideration to "training and/or schooling in the electrical or electronics field."
53. In fact, the CBA elevates other considerations above "previous plant experience for the work covered by the vacancy;" when Defendant Verizon elevated that factor, and

disregarded "qualifications," its hiring practices actually conflicted with the mandate of the CBA.

54. In each if not every such instance the person to whom the bid was awarded was thereafter trained for several or more weeks to be able to accomplish the duties of the particular position, as was provided in Defendant Verizon's job postings. For one example, see Exhibit A, attached hereto.

55. Furthermore, on information and belief, it was a common practice at those times, and before and after those time periods, for bids to be posted for a few days, so Verizon Defendants could see who bid for the jobs internally. If Verizon Defendants determined a woman then employed in a clerical/office position was most qualified and thus otherwise entitled to be awarded the bid, the Verizon Defendants would then cancel the bids and post bids "externally."

56. In many of these instances, after Defendant Verizon cancelled the job postings for which Plaintiff Urella and other Class Members applied, and posted them externally, Defendant Verizon always or almost always awarded the jobs to men hired off the street under the Union's Collective Bargaining Agreement with Defendant Verizon ("CBA").

    a. For example, with regard to the openings posted in April and July of 2021, Verizon Defendants cancelled two of the three postings, and posted them "externally;" and

    b. Likewise, as to the set of jobs posted in June and/or July, 2018, before the bid was closed, Verizon Defendants cancelled all of these bids except for 1, to be posted "externally."

57. The primary, if not the only reason many of the men Defendant Verizon hired internally had "previous plant experience for the work covered by the vacancy" is/was because Defendant Verizon has/had a long history of not hiring women for that work, thus, the Plaintiff Urella and other Class Members could not obtain plant experience while working for Defendant Verizon.

58. In this fashion, the provision of G30.06, note (c) operates/ed to perpetuate the exclusion of women from promotion into craft-rated jobs.

59. Plaintiff Urella and other Class Members suffered lost income and suffered emotional distress because of the Verizon Defendants' discriminatory treatment.

60. On or about July 17, 2018 Plaintiff Urella met with Julie Slattery ("Slattery"), Verizon V.P. of Field Operations, to complain about discrimination against women. At the meeting Plaintiff Urella advised Slattery that she was complaining about Defendant Verizon's "good ol' Boys Club," and the channeling of women into clerk, service and operations positions.
61. Slattery failed to refer the matter to the appropriate EEOC employee within Defendant Verizon.
62. Instead Slattery directed Plaintiff Urella to bring her concerns to the Union, and did nothing more.
63. Furthermore, Slattery tried to induce Plaintiff Urella to drop the matter by inquiring if she would be willing to take a management position.
64. A month later Plaintiff Urella advised Slattery that she had complained to the Union that Defendant Verizon's "award system [needing to] be more fair and diverse," at which time the Union official "hung up [the phone] on [her]. Slattery replied only, "He hung up on you?," and thereafter did nothing about the situation.
65. On or about November 21, 2018, Plaintiff Urella filed a complaint of discrimination with the MCAD. It was stamped "received" on December 4, 2018. Exhibit B, attached hereto. Her complaint was jointly filed on or about said date with the Equal Employment Opportunities Commission ("EEOC") of the United States.
66. On or about July 30, 2021, though counsel, Plaintiff Urella filed a motion to amend her MCAD Complaint along with a list of additional jobs for which she had applied and been denied. Exhibit C, attached hereto.
67. Defendant MCAD allowed her motion, granting an amendment on or about November 23, 2021. Exhibit D, attached hereto.
68. In response to said Complaints, Defendant Verizon made *ex parte* submissions of, *inter alia*, Affidavits to the MCAD that the MCAD Defendants accepted, and relied upon, which Affidavits, *inter alia*, misrepresented a number of facts regarding the actions about which Plaintiff Urella had complained, and was denied any opportunity to respond and/or rebut.

69. Conversely, in one such Affidavit, Defendant Verizon admitted that, *inter alia*, in rejecting female applicants they gave no consideration whatsoever to the women's qualifications.

70. In the same motion Plaintiff Urella sought leave to obtain discovery of the Verizon Defendants:

    a. As to how many technical jobs there are at Verizon, how many females are employed in those jobs, the fact that the jobs applied for are entry level and do not require technical skills or experience, and comparing those approximations of female representation at Verizon with the number of women in the general labor pool for that category of position, which might be found in the census data;

    b. As to the company's use of the discretionary right to seek external candidates as the specific practice challenged by the disparate impact analysis, and other practices that appear to favor the male-dominated status quo, even for entry level positions; and

    c. As to whether and when entry level males were hired over Ms. Urella, and whether the right to seek external candidates was invoked more when females were in the pool of applicants.

71. Defendant MCAD denied her motion for discovery on or about November 23, 2021. Exhibit E, attached hereto.

72. Defendant MCAD has adopted a regulation providing conflicting standards for determining:

    a. if there is probable cause to proceed to a hearing as compared to

    b. if there is a lack of probable cause to proceed to a hearing.

    The standard for determining if there is probable cause is akin to the standard for determining if a court should grant or deny summary judgment; however, the standard for determining if there is a lack of probable cause permits the MCAD Defendants to resolve disputes of material facts in favor of a respondent, and not allow a complainant to obtain evidence from a respondent or others to dispute a material fact asserted by a respondent.

73. In cases filed in court, when defendants file a motion for summary judgment, their motions are denied if facts material to the resolution of the motion are disputed, and/or action on their motion may be deferred if the opposing party has requested and not yet

been afforded the opportunity to conduct discovery curtailed to the issues before the court. At the MCAD, by contrast, a finding of no probable cause can be founded on disputed material facts, by interpreting less than complete set of facts, without the adversarial benefits of discovery and without affording an evidentiary hearing to resolve disputed material facts.

74. Many, if not most, claimants who must file complaints of discrimination at the MCAD, do not have the funds to hire lawyers who can take the case out of the MCAD and file in court, where the correct rules of civil procedure concerning motions for summary judgment apply. They therefore are afforded a lower standard of due process than would apply to them had they the funds to file in court, thus resulting in a lesser standard of justice than they would have in court.

75. Consistent with and due to the MCAD Defendants' unlawful policies and practices, on or about March 12, 2022 Defendant MCAD determined that Plaintiff Urella lacked probable cause for her complaint and dismissed it.

76. That determination was inherently unreliable as it was based on (a) accepting as true *ex parte* evidence submitted by Defendant Verizon in secret, thereby affording the Plaintiff Urella no opportunity to submit evidence disputing it and/or demonstrating it to be false, (b) denying Plaintiff Urella the opportunity to discover limited evidence she requested, and (c) resolving disputes of fact without affording Plaintiff Urella an evidentiary hearing.

77. On or about May 25, 2022, Plaintiff Urella, through counsel appealed the lack of probable cause finding within the time line for appeal.

78. On or about August 8, 2022, the Defendant MCAD granted Plaintiff Urella a hearing, at which Plaintiff Urella complained, *inter alia,* about the due process violations committed by the MCAD Defendants and their misapplication of a probable cause standard. A summary of the arguments made by Plaintiff Urella at said hearing is reflected in the notes her Counsel used to make his oral presentation. Those notes are entitled, "Excerpted Notes Prepared for and Worked from for Presentation on Appeal." Exhibit F, attached hereto.

79. On August 26, 2022, the MCAD Defendants affirmed the finding of a lack of probable cause without making any determinations or rulings, or discussing, *inter*

*alia,* the due process violations committed by the MCAD Defendants and their misapplication of a probable cause standard. In the affirmation, the MCAD Defendants indicated there is no avenue of appeal within the MCAD from said decision.

80. Since filing her complaints of discrimination and retaliation, it has become known throughout the Defendant Verizon workforce that Plaintiff Urella has pursued legal action against Defendant Verizon, and the working atmosphere on said account became so hostile that Plaintiff Urella felt compelled to retire.

81. On or about August 26, 2022, the Equal Employment Opportunities Commission ("EEOC") granted Plaintiff Urella the right to bring this action. Exhibit G, attached hereto.

82. Urella brings her state claims more than 120 days after filing her motion to amend her complaint and the amendment being allowed by Defendant MCAD.

  IV. **Causes of Action**

**First Cause of Action**

**GENDER DISCRIMINATION AND HOSTILE WORK ENVIRONMENT BASED ON GENDER**
**(Violation of Title VII, 42 U.S.C. § 2000e-2)**

83. Plaintiff Urella re-alleges Paragraphs 1 through 82 as if stated fully herein.

84. Verizon Defendants discriminated against Plaintiff Urella with respect to terms, conditions, and/or privileges of employment based on her gender as described in Paragraphs 35-82.

85. Additionally, Verizon Defendants created and maintained a hostile work environment against Plaintiff Urella based on her gender.

86. As a result of Verizon Defendants' conduct, Plaintiff Urella has suffered damages, including, but not limited to, emotional distress and lost wages.

**Second Cause of Action**

**RETALIATION**
**(Violation of Title VII, 42 USC § 2000e-3)**

87. Plaintiff Urella re-alleges Paragraphs 1 through 82 as if stated fully herein.

88. Plaintiff Urella engaged in protected activity by, *inter alia,* complaining to Verizon Defendants of gender discrimination in July of 2018, and thereafter by filing a charge of discrimination with Defendant MCAD and the EEOC on or about November 21, 2018.

89. Verizon Defendants retaliated against Plaintiff Urella for engaging in protected activity as described in Paragraphs 35-82.

90. As a result of Verizon Defendants' conduct, Plaintiff Urella has suffered damages, including, but not limited to, emotional distress and lost wages.

**Third Cause of Action**

**GENDER DISCRIMINATION AND HOSTILE WORK ENVIRONMENT BASED ON GENDER**
**(Violation of Mass. Gen. Laws ch. 151B, § 4 [1])**

91. Plaintiff Urella re-alleges Paragraphs 1 through 82 as if stated fully herein.

92. Verizon Defendants discriminated against Plaintiff Urella with respect to terms, conditions, and/or privileges of employment based on her gender as described in Paragraphs 35-82.

93. Verizon Defendants created and maintained a hostile work environment against Plaintiff Urella based on her gender.

94. As a result of Verizon Defendants, Plaintiff Urella has suffered damages including, but not limited to, emotional distress and lost wages.

**Fourth Cause of Action**

**RETALIATION**
**(Violation of Mass. Gen. Laws ch. 151B, § 4[4])**

95. Plaintiff Urella re-alleges Paragraphs 1 through 82 as if stated fully herein.

96. Plaintiff Urella engaged in protected activity by, *inter alia,* complaining to Verizon Defendants of gender discrimination in July of 2018, and by thereafter filing a charge of discrimination with Defendant MCAD and the EEOC on or about November 21, 2018 and an amended charge in July of 2021.

97. Verizon Defendants retaliated against Plaintiff Urella for engaging in protected activity.

98. As a result of Verizon Defendants' conduct, Plaintiff Urella has suffered damages, including, but not limited to, emotional distress and lost wages.

**Fifth Cause of Action**

**INTERFERENCE WITH THE RIGHT TO BE FREE FROM DISCRIMINATION**
**(Violation of Mass. Gen. Laws ch. 151B, § 4[4A])**

99. Plaintiff Urella re-alleges Paragraphs 1 through 82 as if stated fully herein.

100. Plaintiff Urella exercised rights granted and/or protected under Mass. Gen. Laws ch. 151B as described in Paragraphs 35-82.

101. Verizon Defendants interfered with Plaintiff Urella's right to be free from discrimination as a result of her activities described in Paragraphs 35-82.

102. As a result of the conduct of Verizon Defendants, Plaintiff Urella has suffered damages, including, but not limited to, emotional distress and lost wages.

**Sixth Cause of Action**

**AIDING AND ABETTING**
**(VIOLATION OF Mass. Gen. Laws ch. 151B, § 4[5])**

103. Plaintiff Urella re-alleges Paragraphs 1 through 82 as if stated fully herein.

104. Defendant Santos and Symes aided and abetted Defendant Verizon's discriminating against and retaliating against Plaintiff Urella as described in Paragraphs 35-82.

105. As a result of Defendants Santos' and Symes' conduct, Plaintiff Urella has suffered damages, including but not limited to, emotional distress and lost wages.

**Seventh Cause of Action**

**DENIAL OF DUE PROCESS**
**(VIOLATION OF FOURTEENTH AMENDMENT)**

106. Plaintiff Urella re-alleges Paragraphs 1 through 82 as if stated fully herein.

107. In arriving at its finding of lack of probable cause the MCAD Defendants engaged in processes that deprived Plaintiff Urella of due process of law in violation of the Fourteenth Amendment to the Constitution of the United States (a) by, *inter alia*, accepting evidence in secret from Defendant Verizon, and thereby not allowing Plaintiff Urella to rebut said evidence, (b) by resolving disputed facts in favor of Verizon Defendants without holding any evidentiary hearing, and (c) by acting on incomplete evidence, that is, not allowing Urella to obtain any discovery, before making a determination of lack of probable cause.

108. Upon information and belief, Defendant MCAD has consistently in the past acted and will in the future act in the same fashion towards other complainants unless enjoined from doing.

### Eighth Cause of Action
### DENIAL OF DUE PROCESS
### (VIOLATION OF MASS. CONSTITUTION AND MASS. GEN. LAWS CH. 151B)
### ART. CVI - DECLARATION OF RIGHTS AND MASS. GEN. LAWS CH. 151B

109. Plaintiff Urella re-alleges Paragraphs 1 through 82 as if stated fully herein.

110. In arriving at its finding of lack of probable cause the MCAD Defendants engaged in processes that deprived Plaintiff Urella of due process of law in violation of Art. CVI of the Declaration of Rights of the Massachusetts Constitution *inter alia*, (a) by, accepting evidence in secret from Defendant Verizon, and not allowing Plaintiff Urella to rebut said evidence, (b) by resolving disputes of fact without an evidentiary hearing, and/or (c) by acting on incomplete evidence and not allowing a complainant to develop evidence during discovery before making a determination of lack of probable cause.

111. Said conduct also/alternately violated the Mass. Gen. Laws ch. 151B's implicit guarantee of due process.

112. Upon information and belief, Defendant MCAD has consistently in the past acted and will in the future act in the same fashion towards other complainants unless enjoined from doing.

### PRAYERS FOR RELIEF

**WHEREFORE**, Plaintiff Urella respectfully prays that this Court will:

A. Accept jurisdiction of this case.

B. Declare that this case may be maintained as a class action under F. R. Civ. P. 23.

C. Issue a declaratory judgment pursuant to 28 U.S. C. §2201, 2202 and F. R. Civ. P. 57 declaring that Verizon Defendants *et alia*, violated Plaintiff Urella's rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 e-2, retaliated against Plaintiff Urella in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 e-3, discriminated based on gender and created a hostile work environment based on gender in violation of Mass. Gen. Laws ch. 151B [4], retaliated against Plaintiff

Urella in violation of Mass. Gen. Laws ch. 151B, § 4 [4], interfered with Plaintiff Urella's right to be free from discrimination in violation of Mass. Gen. Laws ch. 151B, § 4 [4A], aided and abetted the discrimination and retaliation in violation of Mass. Gen. Laws ch. 151B, § 4 [5**]**.

D. Declare that the MCAD procedures and/or standards complained of violate due process of law in violation of the U.S. and Massachusetts Constitutions.

E. Declare that the MCAD procedures and/or standards complained of violate Mass. Gen. Laws ch. 151B and the regulations promulgated thereunder.

F. Vacate the MCAD finding of lack of probable cause.

G. Issue an injunction pursuant to F. R. Civ. P. 65 enjoining the MCAD Defendants from engaging is said procedures and/or applying those standards determined to violate the U.S. and Massachusetts Constitutions, and/or Mass. Gen. Laws ch. 151B and the regulations promulgated thereunder.

H. After trial by jury is held, award Plaintiff Urella and Verizon Class Members compensatory and punitive damages.

I. Additionally, award reasonable attorney's fees pursuant to 42 U.S.C. § 1988 and Mass. Gen. Laws ch. 151B.

J. Award such other relief as the Court deems just, proper, and equitable.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL TRIABLE ISSUES**

Respectfully submitted,
KELLEY URELLA, Plaintiff,
By her attorneys,

ss: // *Mark D. Stern* //

_____

Mark D. Stern
BBO #479500
Mark D. Stern P.C.
34 Liberty Avenue
Somerville, MA 02144
Phone: 617-776-4020
Fax: 617 776 9250
Email: markdsternpc@comcast.net
Web: www.attorneymarkdstern.com

ss: // *Alan Jay Rom* //

_____

Alan Jay Rom
BBO# 425960
Rom Law P.C.
P.O. Box 585
Chelmsford, MA 01824
617/776-0575-Tel.
978/455-9589-Tel.
617/209-7714-Fax
Email: alan@romlawoffice.com
Web: www.romlawoffice.com

Dated: September 22, 2022