UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ) | |
| **KELLEY URELLA, individually and on** ) | |
| **behalf of all others similarly situated,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Civil Action No. |
| v. ) | 22-11606-FDS |
| ) | |
| **VERIZON NEW ENGLAND INC,** ) | |
| **JOSEPH SANTOS, and ROBERT SYMES,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS AND
TO STRIKE PLAINTIFF'S SECOND AMENDED COMPLAINT**

**SAYLOR, C.J.**

This is a claim for gender discrimination and retaliation. Plaintiff Kelley Urella was an employee of Verizon New England Inc. who worked in a "clerical/office" position. At various times, she sought employment in various "craft-related" positions, without success. She alleges that she was not hired in any of those positions because of her gender and that she was retaliated against for asserting her rights. She has filed suit on behalf of herself and a class of similarly situated employees, alleging unlawful discrimination and retaliation in violation of federal and state law.

Defendant Verizon New England Inc. has moved to dismiss certain claims against the individual defendants and to strike the class allegations in the complaint. For the reasons set forth below, the partial motion to dismiss will be granted and the motion to strike will be denied.

**I.   Background**

Unless otherwise noted, the following facts are drawn from the second amended

complaint.

A.     **Factual Background**

Kelley Urella was an employee of Verizon New England Inc. for approximately thirty years.  (SAC ¶ 27).  She is now retired.  (*Id*.).  While employed at Verizon, she was a member of Local 2325 of the International Brotherhood of Electrical Workers.  (*Id*. ¶ 28).

According to the complaint, "Joseph Santos was[,] and his successor, Robert Symes, is[,] the Human Resources and Labor Relations Director" of Verizon.  (*Id.* ¶ 25).

Urella was employed by Verizon in a non-management "clerical/office" position.  (*Id*. ¶ 29).  That position was paid less than a "craft-rated" job, such as a central office technician, equipment installation technician, outside plant technician, or splice service technician.  (*Id*. ¶¶ 30-31).  According to the complaint, most other female employees at Verizon held clerical/office positions.  (*Id*. ¶ 29).

The complaint alleges that Urella was qualified for several of those craft-rated jobs by her training, education, and physical suitability.  (*Id*. ¶ 32).  Several times, including in 2018, 2020, and 2021, she applied to multiple postings for craft-rated jobs.  (*Id*. ¶ 33).  Despite meeting the listed qualifications, and receiving notification that she was "already online test-qualified" for various positions, she was never given any of the positions to which she had applied.  (*Id*. ¶¶ 34-38).

The complaint alleges that in each instance when Urella, and other proposed class members, applied for craft-rated positions, defendants failed to consider their qualifications and physical suitability, and instead only considered tenure, union membership, and prior work experience.  (*Id*. ¶ 39).  That allegedly led to the positions frequently being awarded to men with equal or lesser qualifications and seniority.  (*Id*. ¶ 40).

The complaint further alleges that the stated justification for those hirings was that the

2

collective bargaining agreement between the union and Verizon prioritizes "previous plant experience for the work covered by vacancy." (*Id*. ¶ 41). According to the complaint, Urella and others lacked the relevant plant experience because defendants had a long history of not hiring women for that work. (*Id*. ¶ 48). It further alleges that Urella and other purported class members had training and/or schooling in the electrical or electronics field, which defendants supposedly considered as previous work experience, but that such backgrounds were not actually considered in practice. (*Id*. ¶¶ 42-43).

According to the complaint, on July 17, 2018, Urella met with Julie Slattery, Vice President of Field Operations at Verizon, to discuss her concerns about discrimination against women and the channeling of women into clerk, service, and operations positions. (*Id*. ¶ 51). Instead of referring her to the appropriate EEOC employee at Verizon, Slattery directed Urella to speak with the union and inquired about her interest in a management position. (*Id*. ¶¶ 52-54). Urella informed Slattery a month later that the union official hung up the telephone when she attempted to raise her complaint; Slattery took no further actions. (*Id*. ¶ 55).

On November 21, 2018, Urella filed a complaint against Verizon with the MCAD alleging gender discrimination. (*Id*. ¶ 56). Around the same time, she jointly filed a complaint with the Equal Employment Opportunity Commission. (*Id.*). According to the complaint, Verizon made *ex parte* submissions of affidavits to the MCAD allegedly admitting that they gave no consideration to the women's qualifications. (*Id*. ¶ 60). On August 26, 2022, the EEOC granted plaintiff the right to bring this action. (*Id*. ¶ 61).

B.   **Procedural Background**

The second amended complaint alleges that Verizon discriminated against plaintiff based on her gender, in violation of Title VII, 42 U.S.C. § 2000e-2 (Count 1) and retaliated against her, in violation of Title VII, 42 U.S.C. § 2000e-3 (Count 2). The complaint further alleges that all

defendants discriminated against her based on her gender in violation of Mass. Gen. Laws ch. 151B, § 4(1) (Count 3); retaliated in violation of Mass. Gen. Laws ch. 151B, § 4(4) (Count 4); and interfered with her right to be free from discrimination in violation of Mass. Gen. Laws ch. 151B, § 4(4A) (Count 5). Finally, the complaint alleges that Santos and Symes aided and abetted Verizon's discrimination and retaliation against her in violation of Mass. Gen. Laws ch. 151B, § 4(5) (Count 6).

Defendants have moved to dismiss all claims against Symes; to dismiss Counts 3 and 6 as to Santos; and to strike the class-action allegations pursuant to Fed. R. Civ. P. 12(f).[1]

## II.   Standard of Review

To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). When determining whether a complaint satisfies that standard, a court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences. *See Ruiz v. Bally Total Fitness Holding*

---

[1] Defendants' motion to dismiss was filed the same day, and after, the answer of defendant Verizon New England Inc. (*See* ECF Nos. 43, 44). It is unclear whether a motion to dismiss filed the same day as an answer is "made before pleading" under Rule 12. *Natour v. Bank of Am., N.A.*, 2021 WL 5239592, at *5 (E.D. Tex. Nov. 10, 2021), *compare Bardelon v. Wells Fargo Fin. La., LLC*, 2018 WL 3587690 at *9 n.50 (E.D. La. July 25, 2018) (holding that a motion to dismiss filed the same day as movant's answer was timely filed in accordance with Rule 12(b)); *with Alilin v. St. Farm Mut. Auto. Ins. Co.*, 2014 WL 7734262, at *3 (M.D. Fla. Jan. 30, 2014) (finding motion to dismiss was untimely where it was filed the same day as, and docketed after, the answer); *Martinez v. Petrenko*, 2012 WL 6552804, at *1 (D.N.H. Dec. 14, 2012). Because the motion to dismiss involves only claims against the individual defendants, the timeliness is of no consequence.

*Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

### III. Analysis

#### A. Claims against Symes

Defendants first contend that because Symes was not named in the MCAD complaint, all claims against him should be dismissed. Regulations implementing Chapter 151B require that the charge must include "appropriate identification of the Complainant(s) and the person(s) alleged to have committed unlawful discriminatory acts." 804 CMR 1.04(6); *Chatman v. Gentle Dental Ctr.*, 973 F. Supp. 228, 233 (D. Mass. 1997). If a complainant fails to name a party in an MCAD charge, that may preclude the plaintiff from later maintaining a Chapter 151B claim against that party. *Chatman*, 973 F. Supp. at 233; *August v. Offices Unlimited, Inc.*, 981 F.2d 576, 578 n.1 (1st Cir. 1992); *Powers v. H.B. Smith Co.*, 42 Mass. App. Ct. 657, 667 (1997).

Several courts have concluded that the "failure to name a party as a respondent in a charge filed with the [MCAD] does not preclude a later civil action against that party if the conduct of the party was put in issue by the charge and the party had notice of and an opportunity to conciliate the charge." *Chatman*, 973 F. Supp. at 234-35; *Szewczyk v. Maxon Precision Motors, Inc.*, 470 F. Supp. 3d 59, 60 (D. Mass. 2020) (quoting same); *Brunson v. Wall*, 405 Mass. 446, 541 (1989); *see also Rosa v. Lawrence Hous. Auth.*, 2021 WL 3054970, at *4 (D. Mass. July 20, 2021), *aff'd*, 2022 WL 18781017 (1st Cir. Oct. 24, 2022); *Sobotka v. Westfield Savings Bank*, 1994 WL 879775 (Mass. Super. April 21, 1994); *but see Riebold v. Eastern Casualty Ins. Co.*, 1997 WL 311523, at *5 (Mass. Super. June 4, 1997). However, if the plaintiff

5

was aware of the party's involvement in the misconduct at the time of the proceeding and failed to name that person, the claim may be barred.  See *Powers*, 42 Mass. App. Ct. at 667 (concluding the claim against the unnamed party was barred when plaintiff could have, but did not, amend the MCAD complaint); *Rosa*, 2021 WL 3054970, at *5; *Preston v. Second Wind, Inc.*, 824 F. Supp. 2d 247, 251 (D. Mass. 2011).

Plaintiff concedes she did not name Symes in her MCAD complaint.  Nonetheless, she asserts that the identification in that complaint of the "Human Resources/Labor Relations Director" was sufficient to put him on notice, particularly because she alleged in her MCAD motion to amend that the violations were continuing.  (Opp. at 10).  She further contends that she did not learn of the allegedly unlawful conduct by Symes until after her MCAD complaint was dismissed.  (*Id.*).

General titles may be sufficient in some circumstances to put an individual on notice of the person alleged to have committed the discriminatory acts.  See *Sobotka*, 1994 WL 879775, at *2-3 (identifying "upper level management" sufficient to place comptroller on notice); *Chapin v. University of Mass.*, 977 F. Supp. 72, 76-77 (D. Mass. 1997) (identifying "[m]anagement or other officials overseeing the Police Department" sufficient to place police chief on notice); *Chatman*, 973 F. Supp. at 233-36.  Nonetheless, it is insufficient here.

In the MCAD complaint, the general title of "Human Resources/Labor Relations Director" appears to be ascribed to Santos, not Symes.  There was no reason for Symes to infer from that identification, or from the charge as a whole, or any of the correspondence with MCAD, that his conduct was implicated.  *Compare Stewart v. Kuligowska*, 28 F. Supp. 2d 690, 692 (D. Mass. 1998) (finding individuals sufficiently referred to when identified in material appended to the MCAD charge); *Mehic v. Dana-Farber Cancer Inst., Inc.*, 2017 WL 637681 (D.

6

Mass. Feb. 16, 2017) (finding individuals sufficiently on notice where their misconduct was referred to in MCAD complaint); *Eichenholz v. Brink's Inc.*, 2017 WL 1902156 (D. Mass. May 9, 2017) (finding defendant on notice when he was "the focus of the particulars section") *with Geraigery v. Cambridge Sch. Dep't*, 2006 WL 8458429 (D. Mass. Dec. 18, 2006) (dismissing individual defendants who were not named or mentioned in body of charge).

In short, the MCAD complaint did not put Symes on notice of his potential liability, and thus did not provide him with an opportunity to conciliate. *See Sheehan v. Verizon Commc'ns, Inc.*, 2005 WL 8175875, at *4 (D. Mass. May 10, 2005) (finding the defendant not on notice despite affidavit filed in MCAD proceeding). "Where notice to defendants of the possibility of a civil action is inadequate, the purposes of the MCAD pleading requirement are frustrated." *Preston*, 824 F. Supp. 2d at 252; *see Fant v. New England Power Serv. Co.*, 239 F.3d 8, 11 (1st Cir. 2001). Even if there are valid reasons for plaintiff's failure to identify him—as she contends in her opposition—no such facts are alleged in the complaint. *See Szewczyk*, 470 F. Supp. 3d at 60 ("[I]t is not possible for this Court to reasonably infer that [defendant] had notice of and an opportunity to conciliate the charges" because "[t]he complaint is silent on this subject.").

Accordingly, all claims against Symes will be dismissed. Although that finding is sufficient to address the claims as to Symes generally, the Court will also address the specifics of Counts 3 and 6 as to him.

### B.     Mass. Gen. Laws ch. 151B, § 4(1) (Count 3)

Both Santos and Symes contend that Count 3 should be dismissed because they were not plaintiff's employer. Pursuant to Mass. Gen. Laws ch. 151B, § 4(1), it is an unlawful practice "[f]or an employer, by himself or his agent" to discriminate on the basis of sex or other protected characteristics.

Section 4(1) applies, on its face, to employers, not employees. *Verdrager v. Mintz, Levin,*

7

*Cohn, Ferris, Glovsky & Popeo, P.C.*, 474 Mass. 382, 396 (2016) ("This provision applies by its terms only to an 'employer.'"); *Ruffino v. State St. Bank & Tr. Co.*, 908 F. Supp. 1019, 1048 (D. Mass. 1995) ("Section 4(1) applies this general prohibition to each employer, acting by and through its principal and its agents."); *Hussey v. E. Coast Slurry Co., LLC*, 2022 WL 617568, at *8 (D. Mass. Mar. 1, 2022) ("These statutes[, § 4(1) and (16A),] require actions to be taken by an employer.").[2]

The complaint does not allege that either Santos or Symes was plaintiff's employer. Rather, it simply asserts that they successively held the position of "the Human Resources and Labor Relations Director" of Verizon. (SAC ¶ 25). Because there are no plausible factual allegations from which it might be reasonably inferred that either Santos or Symes was the employer, the motion to dismiss as to Count 3 as to Santos and Symes will be granted.

### C. Mass. Gen. Laws ch. 151B, § 4(5) (Count 6)

Defendants further contend that the claims against Santos and Symes asserted in Count 6 should be dismissed because the complaint fails to allege sufficient facts to support a claim for aiding and abetting under Chapter 151B, § 4(5).

Subsection 4(5) prohibits aiding, abetting, compelling, or coercing an act that violates any other prohibition of the chapter. Mass. Gen. Laws ch. 151B, § 4(5). To prevail on such an aiding and abetting claim,

> a plaintiff must show (1) that the defendant committed 'a wholly individual and distinct wrong . . . separate and distinct from the claim in main'; (2) 'that the aider or abetter shared an intent to discriminate not unlike that of the alleged principal offender'; and (3) that 'the aider or abetter knew of his or her supporting role in an enterprise designed to deprive [the plaintiff] of a right guaranteed him or her

---

[2] "Other provisions of Section 4 state that individuals, *qua* individuals, and not merely *qua* employer, may be found liable if they engage in practices which are unlawful under [Chapter] 151B." *Ruffino*, 908 F. Supp. at 1048 (citing §§ 4(4A), 4(5)); *see Verdrager*, 474 Mass. at 396; *Welgoss v. Dep't of Transp.*, 2013 WL 4007929, at *2 (Mass. Super. June 21, 2013).

under [Chapter] 151B.'

*Lopez v. Commonwealth*, 463 Mass. 696, 713 (2012) (citing *Harmon v. Malden Hosp.*, 19 Mass. Discrimination L. Rep. 157, 158 (1997)); *Zhao v. Bay Path Coll.*, 982 F. Supp. 2d 104, 115 (D. Mass. 2013) (quoting same); *Saari v. Allegro Microsystems, LLC*, 436 F. Supp. 3d 457, 466 (D. Mass. 2020) (quoting same).

The complaint alleges no plausible factual allegations from which it could be reasonably inferred that either Santos or Symes individually committed a distinct wrong apart from Verizon. Nor does it allege that either Santos or Symes shared an intent to discriminate and retaliate, or that either had the requisite knowledge of the allegedly discriminatory and retaliatory practice. *See, e.g.*, *Lopez*, 463 Mass. at 714; *Saari*, 436 F. Supp. 3d at 466. Therefore, the motion to dismiss Count 6 as to Santos and Symes will be granted.

### IV.     Motion to Strike

Pursuant to Fed. R. Civ. P. 12(f), the court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Courts may strike class allegations in a complaint "[i]f it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis." *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013). However, "courts should exercise caution when striking class action allegations based solely on the pleadings," because "such motions are narrow in scope, disfavored in practice, and not calculated readily to invoke the court's discretion." *Id.* (quoting *Boreri v. Fiat S.p.A.*, 763 F.2d 17, 23 (1st Cir. 1985)). Furthermore, they "require[] a reviewing court to preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." *Id.* (quoting *Mazzola v. Roomster Corp.*, 849 F.Supp.2d 395, 410 (S.D.N.Y. 2012)).

Here, defendants seek to strike the class allegations as alleging an improper fail-safe class. The class-action allegations in the complaint include the following:

> 7. Pursuant to Fed. R. Civ. P. 23 Plaintiff Urella brings this action against Verizon Defendants on behalf of herself, and all other similarly situated female employees, past and current, who were also aggrieved by the kind of conduct alleged in Paragraphs 35-65.
>
> 8. These consist of two sub-classes: (a) all female employees of Defendant Verizon employed in office/clerical positions who applied for and were denied, or (b) all qualified female employees of Defendant Verizon employed in office/clerical positions who were discouraged from applying for craft-rated jobs.

(Compl. ¶¶ 7-8). Defendants contend that "[b]ecause the class action allegations are premised on female employees who were aggrieved like Urella, the Court would have to conduct a trial on the merits of each putative class member's claims to determine whether they are even in the class." (Mem. at 7).

A fail-safe class is a class defined in terms of the legal injury; that is, it "cannot be defined until the case is resolved on its merits." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012); *In re Nexium Antitrust Litig.*, 777 F.3d 9, 22 (1st Cir. 2015). They are seen as problematic because fail-safe classes "make it 'virtually impossible for the Defendants to ever 'win' the case, with the intended class preclusive effects' as any class member against whom Defendant succeeds is thereby excluded from the class." *MSP Recovery Claims, Series LLC & Series 17-04-631 v. Plymouth Rock Assurance Corp., Inc.*, 404 F. Supp. 3d 470, 485 (D. Mass. 2019) (quoting *In re Nexium Antitrust Litig.*, 777 F.3d 9, 22 n.19 (1st Cir. 2015)).[3] However, whether they pose a true threat in the overall context of litigation is debated.

Here, it is not clear whether the class allegations are inartfully worded or if indeed

---

[3] Some courts have expressed doubts as to the prohibition against fail-safe classes. *See In re White*, 64 F.4th 302 (D.C. Cir. 2023) (rejecting a rule against fail-safe classes as a bar to class certification); *Fitzmorris v. New Hampshire Dep't of Health & Hum. Servs. Comm'r Lori Weaver*, 2023 WL 8188770 (D.N.H. Nov. 27, 2023) (collecting cases concerning fail-safe circuit split).

10

plaintiff actually intends to propose a fail-safe class. (*See* Opp. at 2 ("[T]he Defendants read into Plaintiffs' allegation—'all other similarly situated female employees who were also *aggrieved* by the kind of conduct alleged.' Second Am. Compl. ¶ 7 (emphasis added)'—something which is neither intended, nor mandated by the quoted language.")).

The subclasses alone do not allege a fail-safe class; rather, it is the quoted precursor sentence to which defendants object. Other courts have found fail-safe classes in complaints alleging Title VII violations where the classes are defined on the basis of discrimination "because of" their protected class. *See Lucas v. Vee Pak, Inc.*, 68 F. Supp. 3d 870, 880 (N.D. Ill. 2014); *Bolden v. Walsh Constr. Co.*, 688 F.3d 893, 895 (7th Cir. 2012); *Campbell v. Nat'l R.R. Passenger Corp.*, 311 F. Supp. 3d 281, 314 (D.D.C. 2018). That reading is not obviously required here.

Because motions to strike are disfavored, and because the class definition may be refined through the certification process, the Court will not strike the class allegations. *See Manning*, 725 F.3d at 59-60 ("[A] court should typically await the development of a factual record before determining whether the case should move forward on a representative basis, unless it is obvious from the pleadings that it cannot."); *O'Hara v. Diageo-Guinness, USA, Inc.*, 306 F. Supp. 3d 441, 468 (D. Mass. 2018), *on reconsideration*, 370 F. Supp. 3d 204 (D. Mass. 2019) ("[I]ssues of over-breadth and fail-safe definitions 'can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis.'" (quoting *St. Louis Heart Ctr., Inc. v. Forest Pharms., Inc.*, 2013 WL 1076540, at *6 (E.D. Mo. Mar. 13, 2013)); *Costa v. Dvinci Energy, Inc.*, 342 F.R.D. 38, 40-41 (D. Mass. 2022) (declining to dismiss an allegedly fail-safe class). "It is not obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis, or that a potential fail-safe issue cannot be solved

11

by refining the class definition." *Douglas v. EF Inst. for Cultural Exch., Inc.*, 2023 WL 1993499, at *5 (D. Mass. Feb. 14, 2023) (internal citations omitted).  Accordingly, the motion to strike will be denied.

**V.     Conclusion**

For the foregoing reasons, defendants' partial motion to dismiss and to strike plaintiff's second amended complaint of defendants Verizon New England Inc., Joseph Santos, and Robert Symes is DENIED in part and GRANTED in part, as follows:

1. All claims as to defendant Symes are DISMISSED;
2. Count 3 as to defendant Santos is DISMISSED;
3. Count 6 is DISMISSED; and
4. The motion to strike is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Dated:  March 12, 2024                               Chief Judge, United States District Court